# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | Civil Action Case No. 22-cv-00002 |
| Plaintiff, | |
| v. | |
| POWERSOUTH ENERGY COOPERATIVE and LIBERTY MUTUAL GROUP INC., | |
| Defendants. | |

## COMPLAINT

Plaintiff Great American Insurance Company ("Great American") files this Complaint against PowerSouth Energy Cooperative ("PowerSouth") and Liberty Mutual Group Inc. ("Liberty Mutual") (collectively, "Defendants"), respectfully showing this Court as follows:

## SUMMARY OF ACTION

1.

This lawsuit arises out of the settlement of claims for damages made by Joseph Kelly, Jr. in a lawsuit styled *Joseph E. Kelly, Jr. v. PowerSouth Energy Cooperative, et al.*, in the Circuit Court of Washington County, Alabama, Case No. 65-CV-2018-90060 (the "Underlying Action").

2.

Kelly's claims in the Underlying Action arose out of a workplace accident (the "Accident") that occurred on August 31, 2016 resulting in serious injuries. Kelly alleged that such injuries were due to the negligence of PowerSouth. Kelly also pursued a workers' compensation claim against Tractor & Equipment Co., Inc. ("TEC").

3.

State Auto Mutual Insurance Company ("State Auto"), TEC's commercial general liability insurer, provided a defense to PowerSouth in the Underlying Action given PowerSouth's status as an additional insured pursuant to a purported indemnity obligation owed by TEC to PowerSouth in connection with the Accident.

4.

PowerSouth's own insurer for the relevant time period was Liberty Mutual.

5.

Neither State Auto, PowerSouth, nor Liberty Mutual would agree to pay any amount to settle the Underlying Action, even shortly before a trial that had been specially set for August 23, 2021.

6.

Then, on August 16, 2021 – just one week before trial – State Auto tendered its $1 million limit of liability in partial settlement of the Underlying Action.

7.

Following State Auto's tender, neither PowerSouth nor Liberty Mutual would agree to pay any amount to resolve the Underlying Action prior to trial.

8.

On August 19, 2021, therefore, Great American agreed to pay an additional $1 million in full and final settlement of the Underlying Action under a commercial umbrella policy issued to TEC notwithstanding Great American's coverage defenses only given the impending trial and order to avoid the risk of an extremely substantial verdict.

9.

Now, therefore, and following the ongoing refusal of PowerSouth and Liberty Mutual to contribute towards settlement, Great American seeks a declaration that a specific provision of its policy, the "ADDITIONAL INSURED LIMITATION" added by endorsement, eliminates any indemnity obligation on the part of Great American with respect to the Underlying Action.

10.

Great American additionally seeks a declaration that its policy is excess to other available insurance, including, in particular, the policy issued to PowerSouth

by Liberty Mutual or, in the alternative, that the policies issued by Great American and Liberty Mutual apply *pro rata* by limits.

11.

Moreover, and given the lack of coverage available under the terms of the applicable policy, Great American seeks to recover from PowerSouth and Liberty Mutual the amount paid in settlement via the doctrines of equitable subrogation, contractual subrogation, and/or contribution.

**PARTIES, JURISDICTION AND VENUE**

12.

Plaintiff Great American is an Ohio corporation with its principal place of business in Cincinnati, Ohio, and so is a citizen of Ohio.

13.

Defendant PowerSouth is an Alabama corporation with its principal place of business in Andalusia, Alabama. PowerSouth may be served via its registered agent, Christopher S. Simmons, at 184 Commerce Street, Montgomery, Alabama 36104. PowerSouth is subject to the jurisdiction of this court and venue as to it is proper pursuant to 28 U.S.C. § 1391(b)(2).

14.

Defendant Liberty Mutual is a Massachusetts corporation with its principal place of business in Boston, Massachusetts. Liberty Mutual may be served via its

registered agent, Corporation Service Company Inc., at 641 South Lawrence Street, Montgomery, Alabama 36104.  Liberty Mutual is subject to the jurisdiction of this court and venue as to it is proper pursuant to 28 U.S.C. § 1391(b)(2).

15.

Great American files this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. and also asserts state law causes of action.

16.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Great American and Defendants, and the amount in controversy exceeds $75,000, exclusive of costs.

17.

Venue is proper in the United States District Court for the Southern District of Alabama.

## BACKGROUND FACTS

18.

Kelly's claims in the Underlying Action arose out of the Accident and included allegations against both PowerSouth and TEC.

19.

PowerSouth and TEC had entered into a purchase order dated July 29, 2016 (the "Purchase Order) relating to the work being performed when Kelly was injured.

20.

The Purchase Order states that TEC is to provide general liability coverage with "limits for bodily injury or death of not less than $1 million each occurrence," and further states that "[a] single limit of $1million of bodily injury and property damage is acceptable."

21.

Given the terms of the Purchase Order, State Auto, TEC's commercial general liability insurer, provided a defense to PowerSouth in the Underlying Action. Liberty Mutual, PowerSouth's commercial general liability insurer, did not defend PowerSouth or contribute to its defense.

22.

The Court in the Underlying Action specially set the matter for trial beginning August 23, 2021.

23.

On August 16, 2021 – exactly seven (7) days before trial – State Auto tendered its $1 million limit in settlement of the Underlying Action on behalf of PowerSouth in response to a demand well in excess of that amount.

24.

Notwithstanding State Auto's tender, and although PowerSouth's policy with Liberty Mutual was written on a primary basis, Liberty Mutual and PowerSouth refused to contribute towards a final settlement of the Underlying Action.

25.

Great American issued a commercial umbrella policy to TEC (the "Great American Policy") identifying State Auto's policy in the "Schedule of Underlying Insurance."

26.

In order to protect the interests of its insured, TEC, and of its purported additional insured, PowerSouth, therefore, and following State Auto's tender, Great American agreed to pay an additional $1 million to fully and finally resolve the Underlying Action, for a total settlement of $2 million.

27.

Great American agreed to such settlement notwithstanding its coverage defenses and despite the refusal of both PowerSouth and Liberty Mutual to contribute solely given the impending trial date and due to its concern that it act with the utmost good faith to protect the interests of its insured and purported additional insured.

28.

In agreeing to such payment, and before issuing the same, Great American communicated to counsel for all involved, and to the mediator assisting in brokering a settlement, that Great American had agreed to the settlement under exceptional circumstances constituting duress given the impending trial date and notwithstanding its coverage defenses. Great American further stated that it did not waive any rights under its policy, reserved all such rights, and would file suit to recover the amount of the settlement and, potentially, other elements of damage and expense.

29.

Kelly executed a "SETTLEMENT AGREEMENT WITH FULL AND FINAL RELEASE OF ANY AND ALL CLAIMS" on September 10, 2021.

30.

Judge C. Robert Montgomery signed an "ORDER OF PRO TANTO DISMISSAL" of the Underlying Action on October 12, 2021.

**RELEVANT POLICIES**

31.

Great American issued the Great American Policy, policy no. TUU 4-00-22-34-01, to TEC for the policy period September 30, 2015 to September 30, 2016.

32.

The Great American Policy provides umbrella coverage – subject to all terms, conditions, definitions, and exclusions – only for "those sums in excess of the 'Retained Limit' that the 'Insured' becomes legally obligated to pay by reason of liability imposed by law or assumed by the 'Insured' under an 'insured contract' because of," among other things, "bodily injury" resulting from an "occurrence" that takes place during the policy period.

33.

The "Retained Limit," as defined at Section II., "LIMITS OF INSURANCE," Part G., "Retained Limit," is the greater of either the Self-Insured Retention or the applicable underlying limits identified in the Schedule of Underlying Insurance.

34.

The Great American Policy's Self-Insured Retention is $10,000.00.

35.

The applicable underlying limit identified in the Schedule of Underlying Insurance is the $1 million per occurrence limit of State Auto policy no. SPP2531195 issued for the policy period September 30, 2015 to September 30, 2016.

36.

Thus the Great American Policy could not be even potentially implicated with respect to the Underlying Action unless and until the limits of the State Auto Policy were exhausted.

37.

The Great American Policy contains an endorsement entitled "ADDITIONAL INSURED LIMITATION" which defines "Insured" to include any organization "included as an additional 'insured' solely by virtue of an 'Insured Contract," and to which coverage is provided by the "underlying insurance …."

38.

Per the endorsement, however,

> [t]he Limits of Insurance applicable to the additional "Insured" are the lesser of those specified in the Declarations of this policy or those specified in the "insured contract" less the applicable "underlying insurance." The Limits of Insurance applicable to the additional "Insured" are included within, and not in addition to, the Limits of Insurance shown in the Declarations.

39.

The Great American Policy further provides at Section VI., "Conditions," Part J., "Other Insurance:"

**J.  Other Insurance**

If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

40.

The Great American Policy further provides, in relevant part:

    **M.**    **Transfer of Rights of Recovery Against Others to Us**

If any "Insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair those rights and must help us enforce them."

41.

Liberty Mutual issued a Commercial General Liability insurance policy to PowerSouth (the "Liberty Mutual Policy") providing for a $25 million limit of liability both per occurrence and in the aggregate, subject to a $350,000 self-insured retention.

42.

Great American does not possess a copy of the Liberty Mutual Policy because, although Liberty Mutual made demands upon Great American to defend and indemnify PowerSouth in the Underlying Action, and notwithstanding the terms of the Great American Policy and its coverage defenses, Liberty Mutual refused to provide a copy of the Liberty Mutual Policy to Great American.

43.

Such refusal was in bad faith and carried out for an improper purpose and evidences Liberty Mutual's stubborn litigiousness.

44.

Notwithstanding Liberty Mutual's refusal, and upon information and belief, the Liberty Mutual policy contains "Other Insurance" language similar to that contained in the Great American policy, such that, subject to each of the respective policies other terms, conditions, definitions, and exclusions, the policies applied to the Underlying Action on a pro rata basis under Alabama law, rather than as primary and excess.

45.

Moreover, and following State Auto's tender, both the Great American Policy and the Liberty Mutual Policy were simultaneously implicated.

**COUNT ONE**
**DECLARATORY JUDGMENT**

**THE "ADDITIONAL INSURED LIMITATION ENDORSEMENT" ELIMINATES ANY COVERAGE OBLIGATION ON THE PART OF GREAT AMERICAN**

46.

Great American repeats and realleges the foregoing paragraphs as if fully set forth herein.

47.

Even assuming the Purchase Order provided meets the definition of an "insured contract," it specifies that TEC was to provide general liability coverage with "limits for bodily injury or death of not less than $1 million each occurrence," and further states that "[a] single limit of $1million of bodily injury and property damage is acceptable."

48.

Because TEC was required to obtain insurance only in the amount of $1 million, the Great American Policy is inapplicable pursuant to the "ADDITIONAL INSURED LIMITATION" since that provision specifies that the applicable limits are those specified in the Purchase Order "less the appliable 'underlying insurance' – the $1 million limit of the State Auto policy.

**COUNT TWO**
**DECLARATORY JUDGMENT**

**THE GREAT AMERICAN POLICY'S "OTHER INSURANCE" PROVISION RENDERS THE GREAT AMERICAN POLICY EXCESS TO ANY OTHER AVAILABLE COVERAGE OR REQUIRES THE LIBERTY MUTUAL POLICY AND THE GREAT AMERICAN POLICY TO APPLY ON A *PRO RATA* BASIS**

49.

Great American repeats and realleges the foregoing paragraphs as if fully set forth herein.

50.

The "Other Insurance" provision of the Great American Policy provides that the Great American Policy is excess of other available insurance.

51.

Upon information and belief, therefore, the Great American Policy applies only in excess of the Liberty Mutual Policy, even to the extent coverage is otherwise available.

52.

Alternatively, and to the extent the Liberty Mutual Policy contains the same or similar "other insurance" language, the Great American Policy applies *pro rata* with the Liberty Mutual Policy by limits.

## COUNT THREE
## EQUITABLE SUBROGATION

**GREAT AMERICAN IS EQUITABLY SUBROGATED TO THE RIGHTS OF POWERSOUTH UNDER THE LIBERTY MUTUAL POLICY TO RECOVER THE AMOUNT PAID IN SETTLEMENT**

53.

Great American repeats and realleges the foregoing paragraphs as if fully set forth herein.

54.

Following State Auto's tender, the Liberty Mutual Policy and the Great American Policy contemplated the same insurable interest, subject matter, and risk.

55.

Liberty Mutual had multiple opportunities to settle the Underlying Action instead of or along with Great American but refused to do so.

56.

Indeed, Liberty Mutual would not agree to offer any amount in settlement notwithstanding its contractual obligations to its insured.

57.

Liberty Mutual had a duty to act as an ordinarily prudent insurer when deciding whether to settle or to allow a case to proceed to trial and create an unreasonable risk of an excess judgment.

58.

Liberty Mutual's failure to settle the Underlying Action created an unreasonable risk of a multi-million dollar final judgment, and Liberty Mutual knew of such risk in light of advice provided from defense counsel that such a verdict was likely.

59.

Liberty Mutual further knew that the risk of such a verdict would subject PowerSouth to personal loss.

60.

Liberty Mutual breached its duty to PowerSouth and Great American and acted in bad faith as well as negligently in failing to settle the Underlying Action.

61.

Liberty Mutual, having elected to protect its own interests rather than those of its insured, is therefore obligated to reimburse Great American for the $1 million Great American agreed to pay to resolve the Underlying Action or to reimburse Great American *pro rata* by limits in the event the Liberty Mutual Policy and the Great American Policy apply on a *pro rata* basis.

## COUNT FOUR
## CONTRACTUAL SUBROGATION

62.

Great American repeats and realleges the foregoing paragraphs as if fully set forth herein.

63.

Per the terms of the Great American Policy, Great American is contractually subrogated to the claims, rights, and demands for payment of PowerSouth with respect to the Underlying Action.

64.

The settlement payment made by Great American was made only because Liberty Mutual failed to satisfy its contractual obligation to PowerSouth.

65.

Liberty Mutual, having elected to protect its own interests rather than those of its insured, is therefore obligated to reimburse Great American for the $1 million Great American agreed to pay to resolve the Underlying Action or to reimburse Great American *pro rata* by limits in the event the Liberty Mutual Policy and the Great American Policy apply on a *pro rata* basis.

## COUNT FIVE
## CONTRIBUTION

### POWERSOUTH AND LIBERTY MUTUAL ARE LIABLE TO GREAT AMERICAN FOR CONTRIBUTION

66.

Great American repeats and realleges the foregoing paragraphs as if fully set forth herein.

17

67.

The Liberty Mutual Policy and the Great American Policy contemplate the same insurable interest, subject matter, and risk.

68.

Great American paid the entire amount of the settlement of the Underlying Action in excess of State Auto's $1 million payment notwithstanding the coverage available from Liberty Mutual covering the same risk or contemplating coverage prior to coverage being implicated with respect to the Great American Policy.

69.

Having paid the entirety of the settlement beyond State Auto's contribution, Great American is entitled to contribution from PowerSouth and Liberty Mutual by operation of law, either in the full amount of such payment or *pro rata* by limits.

WHEREFORE, Great American respectfully requests that this Court enter a judgment in Great American's favor and:

1. declare that the "ADDITIONAL INSURED LIMITATION" endorsement eliminates Great American's coverage obligation with respect to the Underlying Action;

2. declare that the Great American Policy is excess to the Liberty Mutual Policy or, alternatively, applies pro rata by limits;

3. award to Great American $1 million representing the settlement it paid under duress via the doctrines of equitable subrogation, contractual subrogation, and/or contribution;

4. grant a trial by jury; and

5. award such other and further relief as this Court deems just and proper.

Respectfully submitted, this 3rd day of January, 2022.

**NORMAN, WOOD, KENDRICK & TURNER**

Ridge Park Place, Suite 3000
1130 22nd Street South
Birmingham, AL  35205
205-259-1033 direct
205-251-5479 fax
*kturner@nwkt.com*

**s/ Kile T. Turner**
**KILE T. TURNER**
Alabama Bar No. ASB-8182-U83K

*Counsel for Plaintiff Great American Insurance Company*

**KERSHAW WHITE LLC**

5881 Glenridge Drive
Suite 100
Atlanta, GA  30328
470-443-1100 main
470-344-0958 direct
404-748-1179 fax
*jeff.kershaw@kershawwhite.com*

**s/ Jeffrey A. Kershaw**
**JEFFREY A. KERSHAW**
Georgia Bar No. 159054
**(Pro Hac Vice application forthcoming)**

*Of Counsel for Plaintiff Great American Insurance Company*