IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) CIVIL ACTION 22-0002-WS-B <br> ) |
| POWERSOUTH ENERGY COOPERATIVE, et al., | ) <br> ) <br> ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on motions for summary judgment filed by the plaintiff ("Great American"), the two defendants ("Liberty Mutual" and "PowerSouth"), and the third-party defendant ("Tractor").  (Docs. 81, 83, 86, 90). The parties have filed briefs (totaling over 300 pages) and evidentiary materials in support of their respective positions, (Docs. 81, 84-87, 89, 90, 92, 94-103), and the motions are ripe for resolution.[1]  After careful consideration, the Court concludes that the motions of Liberty Mutual and PowerSouth are due to be granted, that the motion of Tractor is due to be granted in part and denied in part, and that the motion of Great American is due to be denied.

## BACKGROUND

PowerSouth issued a purchase order ("the Purchase Order") to Tractor regarding a certain bulldozer.  (Doc. 85-3).  The Purchase Order contained an indemnity provision ("the Indemnity Provision") generally requiring Tractor to indemnify PowerSouth from loss sufficiently related to the Purchase Order.  (*Id.* at 3-4).

---

[1] PowerSouth's unopposed motion to substitute exhibits, (Doc. 108), is **granted**.

An employee of Tractor ("Kelly") was injured on PowerSouth's premises. According to Kelly's complaint, after he delivered the bulldozer and while he was assembling the push blade, a support strut struck him. The strut had been temporarily jammed into place so it could not swing freely, but a PowerSouth employee hit the strut with a large hammer, causing it to dislodge and strike Kelly. Kelly sued PowerSouth for negligence and wantonness ("the *Kelly* lawsuit"). (Doc. 81-2 at 4-8).

Tractor was insured by a non-party ("State Auto") under a commercial general liability ("CGL") policy. (Doc. 85-2). State Auto provided a defense to PowerSouth and, a week before trial, tendered its policy limits of $1 million in partial settlement of the *Kelly* lawsuit.

Great American had issued Tractor an umbrella policy. (Doc. 86-4). Liberty Mutual had issued PowerSouth a CGL policy. (Doc. 86-5). Great American believed its policy to be excess to that of Liberty Mutual, but Liberty Mutual repeatedly declined to share its policy so that Great American could verify its belief. After State Auto tendered its policy limits, Great American called upon Liberty Mutual and PowerSouth to settle the *Kelly* lawsuit or contribute to its settlement, but they declined. On the eve of trial, Great American agreed to pay $1 million to settle the *Kelly* lawsuit.

Great American thereafter brought the instant action against Liberty Mutual and PowerSouth. Count One seeks a declaration that the Great American policy's "additional insured limitation" endorsement eliminates any coverage obligation. Count Two seeks a declaration that, based on the policies' "other insurance" provisions, either the Great American policy is excess to the Liberty Mutual policy or the two apply simultaneously and *pro rata*. Counts Three, Four, and Five seek recovery from Liberty Mutual and PowerSouth of some or all of the $1 million that Great American paid in settlement of the *Kelly* lawsuit, under theories of equitable subrogation, contractual subrogation, and contribution, respectively. (Doc. 14).

PowerSouth then filed a third-party complaint against Tractor. Count One seeks a declaration that, pursuant to the Purchase Order, Tractor owes PowerSouth a defense and indemnity regarding Great American's claims in this action. Count Two asserts a breach of Tractor's contractual obligation to provide such defense and indemnity. (Doc. 37).

In response, Tractor filed a third-party claim against Great American. The single count seeks declarations that Great American owes Tractor a defense and indemnity with respect to PowerSouth's third-party complaint and that PowerSouth is an additional insured under the Great American policy with respect to the *Kelly* lawsuit, with available limits of $25 million. (Doc. 50).

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of

proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the [non-movant's] version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the [movants] and not in tension with the [non-movant's] version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary

judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). Moreover, "a passing reference to an issue in a brief [i]s insufficient to properly raise that issue." *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005). The Court accordingly limits its review to those arguments the parties have expressly and adequately advanced.

## I.  Great American's Claims.

Great American seeks summary judgment in its favor as to all five claims. (Doc. 81 at 3, 5-6, 30). Liberty Mutual and PowerSouth seek summary judgment in their favor as to all five claims. (Doc. 86 at 1; Doc. 87 at 30; Doc. 90 at 26-29). Great American first argues on various grounds that its policy is not implicated. It argues in the alternative that its policy applies only in excess of Liberty Mutual's policy.

### A.  Great American's Coverage Obligation.

The Great American policy provides in pertinent part as follows:

> We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury" … that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.

(Doc. 86-4 at 18).

The term "Insured" includes both the named insured (Tractor) and:

> Any person or organization, other than the Named Insured, included as an additional "Insured" solely by virtue of an "Insured Contract," and to which coverage is provided by the "underlying insurance," and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured."

(*Id*. at 23, 54).

"Insured contract" means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the "tort liability" of another party to pay for "bodily injury" … to a third person or organization, provided that the "bodily injury" … occurs subsequent to the execution of the contract or agreement.  "Tort liability" means a civil liability that would be imposed by law in the absence of any contract or agreement.

(*Id.* at 24).

The indemnity provision reads in pertinent part as follows:

5) INDEMNIFICATION:  Seller agrees to indemnify and save PowerSouth, its officers, agents and employees harmless from any and all losses, liabilities, damages, claims, demands, suits, actions, proceedings, subrogations and expenses, including court costs and reasonable attorney's fees arising from this Purchase Order, or the services performed or goods delivered under this Purchase Order, which are claimed or made by any person, firm, association or corporation, including employees, workmen, servants or agents of the Seller and its subcontractors, whether or not due in whole or in part to conditions, acts or omissions done or permitted by PowerSouth.

(Doc. 86-1 at 3-4).

**1. Enforceability of the Indemnity Provision.**

Great American, through its 30(b)(6) representative, has conceded that the Purchase Order, with its Indemnity Provision, is a written agreement entered into by Tractor and pertaining to Tractor's business, under which Tractor agreed to assume the tort liability of PowerSouth to pay for bodily injury to a third person under some circumstances, all within the contemplation of the policy's definition of an "insured contract."  (Doc. 89-9 at 30, 33).  Great American recognizes that its representative conceded the satisfaction of all stated elements of an "insured contract."  Great American also recognizes that, if the Purchase Order constitutes an "insured contract," PowerSouth is its additional insured.  Great American argues, however, that the Purchase Order cannot be an "insured contract" if its

6

Indemnity Provision is void and unenforceable, (Doc. 99 at 5), and it insists that the provision is "invalid as a matter of Alabama law."  (Doc. 81 at 14).

"An agreement by one person to indemnify another for the other's negligent conduct is enforceable only if the indemnity provisions are unambiguous and unequivocal."  *City of Montgomery v. JYD International, Inc*., 534 So. 2d 592, 594 (Ala. 1988); *accord Holcim (US), Inc. v. Ohio Casualty Insurance Co*., 38 So. 3d 722, 727 (Ala. 2009) (language must be "clear and unequivocal") (internal quotes omitted).  Liberty Mutual argues that the final clause of the indemnity provision clearly and unequivocally extends Tractor's indemnity obligation to losses and liabilities, etc., caused by PowerSouth's negligence.  (Doc. 95 at 19-20).  *See Craig Construction Co. v. Hendrix*, 568 So. 2d 752, 757 (Ala. 1990) (language identical to the concluding phrase of the Indemnity Provision unambiguously encompassed the indemnitee's negligence).

Great American does not disagree with PowerSouth's position.  Instead, it argues that, when an indemnity provision extends to the indemnitee's own negligence, the entire provision must be "clear and unequivocal."  Great American says this standard is not met here because the absence of a comma between "attorney's fees" and "arising from," if it does not affirmatively eliminate any possible indemnity obligation in this case, at least introduces sufficient ambiguity to cause the Indemnity Provision to fail the "clear and unequivocal" test, rendering the entire provision unenforceable.  (Doc. 81 at 14-15).

The parties identify no authority specifying the extent of the "clear and unequivocal" requirement.[2]  Assuming without deciding that it applies to every aspect of an indemnity provision that purports to indemnify against the

---

[2] *But see Craig Construction*, 568 So. 2d at 757 (stating, while addressing another aspect of an indemnity provision, that "[w]hen one seeks indemnification from another for damages that were caused by his own negligence, strict construction of the indemnity agreement against the contractor is particularly appropriate").

indemnitee's own negligence, the Court concludes that the standard is met in this case.

A non-restrictive clause is one "so loosely connected with the essential meaning of the sentence that [it] might be omitted without changing the essential meaning." *Deutsche Bank National Trust Co. v. Walker County*, 292 So. 3d 317, 326 (Ala. 2019) (internal quotes omitted). It is perfectly obvious from a reading of the Indemnity Provision that "including court costs and reasonable attorney's fees" is a non-restrictive clause intended to be set off by commas from the balance of the sentence. Removing that clause leaves a coherent agreement that Tractor will indemnify PowerSouth "for losses, liabilities … and expenses arising from this Purchase Order, or the services performed or goods delivered under this Purchase Order …." This remaining language identifies the necessary relationship between the losses, liabilities, etc. and the Purchase Order (arising from the Purchase Order, or arising from the services performed under the Purchase Order, or arising from the goods delivered under the Purchase Order) that will trigger an indemnity obligation, with the omitted non-restrictive clause performing the independent function of further describing the categories of losses and expenses to be indemnified (to include court costs and attorney's fees).

If, as Great American would have it, the relevant clause were to run from existing comma to existing comma, excising the clause would result in a provision that Tractor will indemnify PowerSouth "for losses, liabilities … and expenses … or the services performed or goods delivered under this Purchase Order …." The necessary relational phrase "arising from" would no longer modify "the services performed or goods delivered under this Purchase Order," which phrase would instead become nonsensically linked in a series with "losses, liabilities … and expenses."

Great American attempts to salvage the situation by simply positing that the Indemnity Provision allows different levels of indemnification. If the loss, expense, etc. arises from the Purchase Order, only costs and attorney's fees are

indemnifiable.  If the loss, expense, etc. bears some unspecified relation to the services performed or goods delivered under the Purchase Order, full indemnification is available.  (Doc. 81 at 14-15).  The trouble, as shown above, is that the actual language of the Indemnity Provision will not bear that construction.

A word, phrase, or provision is ambiguous only if it is "susceptible of more than one reasonable meaning."  *Ex parte Warren Averett Companies, LLC*, 368 So. 3d 827, 835 (Ala. 2022) (internal quotes omitted).  "The court will so interpret a contract as to reconcile and to enforce all of its terms and not to ignore or to disregard any of its terms so long as such an interpretation is not patently unreasonable."  *Bruce v. Cole*, 854 So. 2d 47, 55 (Ala. 2003).  Great American's proposed construction is not a reasonable interpretation of the Indemnity Provision because it depends on ignoring its language rather than faithfully accounting for it.

It is true that "errant" punctuation can render a provision ambiguous.  *Deutsche Bank*, 292 So. 3d at 329.  It is also true, however, that the drafter "may not punctuate correctly, and yet may clearly express his meaning."  *Id*. at 327 (internal quotes omitted).  The missing comma does not create ambiguity, because Great American can identify no reasonable alternative construction of the provision, as is necessary to demonstrate ambiguity.  On the contrary, the meaning of the provision is "clearly express[ed]" despite the missing comma.[3]

Great American suggests that, even if the language of the Indemnity Provision is clear and unequivocal (and it is), it may still be unenforceable based on PowerSouth's status as its drafter and on PowerSouth's retention of control.

---

[3] The Eleventh Circuit has ruled that Alabama law permits a court to interpolate an obviously missing term into an indemnity provision calling for indemnity against the indemnitee's own negligence.  *See Royal Insurance Co. of America v. Whitaker Contracting Corp*., 295 F.3d 1381, 1383 n.4 (11th Cir. 2002) (inserting the word "due" into a provision requiring indemnity "whether or not in whole or in part to conditions, acts or omissions done or permitted by the Contractor or Owner").  Under *Royal Insurance*, the Court may interpolate a comma between "attorney's fees" and "arising under," because it is obviously missing.  However, the Court need not do so, because the provision is unambiguous even without the comma.

(Doc. 81 at 15-16).  This argument stems from *Brown Mechanical Contractors, Inc. v. Centennial Insurance Co*., 431 So. 2d 932 (Ala. 1983), in which the Court ruled that its conclusion that "the language of the contract does not clearly and unequivocally express an intent that Brown indemnify Goodner for the latter's negligence" was "reinforced by" the "important factor[s]" of construing ambiguous contractual language against the drafter and of "the degree of control retained by the indemnitee over the activity or property giving rise to liability." *Id*. at 946.

*Brown* does not make the indemnitee's authorship an independent basis for voiding an indemnity provision that employs clear and unequivocal language.  It could hardly have done so, since the Alabama Supreme Court in *Industrial Tile, Inc. v. Stewart*, 388 So. 2d 171 (Ala. 1980), made the presence of clear and unequivocal language the *sine qua non* of contractual indemnity against one's own negligence, and did so in the context of an indemnity provision drafted by the indemnitee.  *Id*. at 175-76.[4]  All *Brown* says is that the indemnitee's authorship "reinforces" the conclusion – dictated by the failure to use clear and unequivocal language providing for indemnification against the indemnitee's negligence – that the indemnitee cannot be so indemnified.

The indemnitee's retention of control stands on different footing.  In *JYD*, the Court ruled that, even when an indemnity provision clearly and unequivocally expresses the intent to indemnify against the indemnitee's own negligence, public policy voids such an agreement when the indemnitor "has no right to exercise control over the potentially hazardous area or activity."  534 So. 2d at 595; *accord Nucor Steel, Inc. v. Zurich American Insurance Co*., 343 So. 3d 458, 472 (Ala. 2021) (indemnification for the indemnitee's negligence was inapplicable when the

---

[4] *See also Nationwide Mutual Insurance Co. v. Hall*, 643 So. 2d 551, 556-57 (Ala. 1994) (because the language used in the indemnity provision was clear and unequivocal, indemnification for the indemnitee's own negligence was enforceable even though the indemnitee drafted the provision).

indemnitee "exercise[d] complete control over" both the activity and the area in which it occurred).

Great American, however, does not assert that Tractor, separately or through Kelly, had no right to exercise control over Kelly's work on the bulldozer or over the area in which the work was conducted.  It could not easily do so, given that the Purchase Order provides that Tractor retains "exclusive control of the manners and means of performing the work."  (Doc. 86-1 at 5).  Instead, Great American's entire argument is that Tractor contracted for "the delivery of an item at PowerSouth's property."  (Doc. 81 at 16).  That banal statement does not remotely implicate either the scenario or the public policy concerns at play in *JYD* and *Nucor*.[5]

For the reasons set forth above, the Court concludes that the Indemnity Provision is valid and enforceable under Alabama law.  As Great American concedes, this means that PowerSouth is its additional insured.

### 2.  Policy limits.

In general, the limits of the Great American policy are $25 million, (Doc. 86-4 at 2), which kick in after the "retained limit" of $1 million is exhausted (as it was here by State Auto's payment).  However, as to one that, like PowerSouth, is an additional insured solely by virtue of an "insured contract," a different limit may apply pursuant to the policy's "additional insured limitation" endorsement:

> The Limits of Insurance applicable to the additional "Insured" are
> the lesser of those specified in the Declarations of this policy or those

---

[5] PowerSouth (not Great American) points to the complaint in the *Kelly* lawsuit, which reflects that Kelly was performing work on the bulldozer, preparing to attach a support strut to the push blade.  (Doc. 94 at 11).  The strut had been temporarily jammed, to keep it from swinging freely, when a PowerSouth employee hit the strut with a large hammer, causing it to dislodge and strike the plaintiff.  (Doc. 86-2 at 4-5).  This places a PowerSouth representative at the scene, but it does not suggest that PowerSouth exercised control, much less exclusive control, over Kelly's work or the area in which it was performed.

> specified in the "insured contract" less the applicable "underlying insurance."  The Limits of Insurance applicable to the additional "Insured" are included within, and not in addition to, the Limits of Insurance shown in the Declarations.

(Doc. 86-4 at 54).  Great American invokes the alternative measurement.  The parties agree that the subtrahend ("the applicable 'underlying insurance') for purposes of this calculation is the $1 million provided under the State Auto policy.  Great American asserts that the minuend ("[t]he Limits … specified in the 'insured contract'") is also $1 million, such that the remainder, and thus the applicable policy limit, is zero.  (Doc. 81 at 16-18).

The Purchase Order includes a provision obligating Tractor to obtain insurance, which provides in pertinent part as follows:

> (1) The Seller shall take out and maintain … insurance of the following minimum types and amounts to protect the Seller and PowerSouth: … (b) General liability insurance covering all operations under the Purchase Order shall have limits for bodily injury or death of not less than $1 million each occurrence, limits for property damage of not less than $1 million each occurrence, and $2 million aggregate for accidents during the policy period.  A single limit of $1 million of bodily injury and property damage is acceptable.  This required insurance may be in a policy or policies of insurance, primary and excess including the umbrella or catastrophe form. … (2) PowerSouth shall have the right at any time to require general liability insurance and property damage liability insurance greater than those limits required in paragraphs (1)(b) and (c) [regarding automobile liability insurance] of this section.  In any such event, the additional insurance premium or premiums payable solely as the result of such additional insurance shall be added to the Purchase Order price.

(Doc. 86-1 at 4-5).

According to Great American, the amount of insurance specified in the Purchase Order is the $1 million figure it expressly mentions.  According to the defendants, this cannot be right, because the Purchase Order requires only a "minimum" amount of "not less than" $1 million and so does not "specify" any particular amount.  (Doc. 90 at 5-9).

The defendants cite two cases involving the "specified" qualifier present in the Great American policy, and both favor their position. *See American Guarantee and Liability Insurance Co. v. Norfolk Southern Railway Co.*, 278 F. Supp. 3d 1025, 1045 & n.5 (E.D. Tenn. 2017) (where the lower policy limits applicable to the additional insured were "those specified in the written contract or agreement" and the agreement required insurance of "not less than" stated amounts, the agreement "d[id] not have a specified cap and the policy's general limits appl[ied]"); *Tomco Painting & Contracting, Inc. v. Transcontinental Insurance Co*., 801 N.Y.S.2d 819, 820 (N.Y. App. Div. 2005) (where the lower policy limits applicable to the additional insured were "those specified in the written contract or agreement" and the agreement required insurance with "minimum general liability limits" of stated amounts, there was "no mention of any specific limits of insurance" and the general limits stated on the declarations page applied).

Great American does not deny that *American Guarantee* and *Tomco* were rightly decided.  Instead, it argues that the language of the Purchase Order renders this case materially "distinguishable" from the defendants' authorities.  First, Great American points to the Purchase Order's statement that "[a] single limit of $1 million of bodily injury and property damage is acceptable."  Second, it emphasizes PowerSouth's reserved right to require insurance "greater than those limits required" earlier in the endorsement.  These provisions, says Great American, "mak[e] plain the intent of PowerSouth and [Tractor] to require insurance only in the amount of $1 million."  (Doc. 99 at 3-4).

Great American places too much weight on these provisions.  The first simply clarifies that, while the limits for bodily injury and death must be at least $1 million, and while the limits for property damage must also be at least $1 million, both these required minimums can be satisfied by a single $1 million limit covering both bodily injury and property damage.  That approach is "acceptable"

as a means of satisfying the $1 million minimum, but it does not convert the minimum into a hard, "specified" figure.

The second provision simply allows PowerSouth to raise the $1 million minimum limit to a higher figure. Had PowerSouth exercised this right, it could perhaps have made the new figure a hard, "specified" amount rather than a new minimum. Great American, however, acknowledges it has no evidence that PowerSouth ever invoked its right, (Doc. 99 at 4), and its mere unexercised authority to later demand higher coverage limits cannot transform the existing minimum limits into a "specified" amount.

Great American cites several cases it believes are favorable to its position, (Doc. 81 at 18-19), but they are not. In each of them, the underlying contract, as here, called for coverage limits of a "minimum" amount or "not less than" a stated amount, but in none of them did the policy base its limits on the amount "specified" in the contract. In most of them, policy limits were not even in issue but rather the separate question of whether the contracting party was an additional insured to begin with.

One of Great American's cases, however, is relevant to the instant motions:

> Based on the language used in the MSA, the Court rules the MSA does not specify the amount of coverage each party agreed to provide. Rather, in giving the terms in the MSA, such as "not less than" and "minimum limits," their plain, ordinary, and generally accepted meaning, the Court finds the parties merely agreed to a floor.

*St. Paul Fire and Insurance Co. v. CP Well Testing, LLC*, 489 F. Supp. 3d 635, 643 (W.D. Tex. 2020), *aff'd sub nom. Cimarex Energy Co. v. CP Well Testing, L.L.C.*, 26 F.4th 683 (5th Cir. 2022). This case reflects that an agreement, such as the Purchase Order, that establishes only minimum limits does not "specify" an amount of coverage.

The defendants argue that the phrase, "Limits of Insurance … specified" unambiguously fails to encompass a mere floor or minimum. (Doc. 90 at 12).

14

Under Alabama law, "[t]he court must enforce the insurance policy as written if the terms are unambiguous …." *Safeway Insurance Co. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). "Whether a provision of an insurance policy is ambiguous is a question of law." *Id.* "If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." *Id.* That is, "[w]hen analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them." *Baldwin Mutual Insurance Co. v. Adair*, 181 So. 3d 1033, 1042 (Ala. 2014) (internal quotes omitted). "A term is ambiguous only if, applying the ordinary meaning, one would conclude that the provision containing the term is reasonably susceptible to two or more constructions." *Herrera*, 912 So. 2d at 1144 (internal quotes omitted).

The authorities offered by the parties reflect that, in common usage, the term "specified" denotes a precise figure and not a range where the floor is given but not the ceiling. Great American, which has not even acknowledged this common meaning, has failed to show that the language is reasonably susceptible of another construction. Even had it done so, and thereby exposed an ambiguity, the defendants correctly note that, "[t]o the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." *Herrera*, 912 So. 2d at 1143; *accord Travelers Casualty and Surety Co. v. Alabama Gas Corp.*, 117 So. 3d 695, 700 (Ala. 2012). It is true that, "[i]n the process of policy interpretation, the rule of *contra proferentem* is employed only if ambiguity remains after resort to other rules of construction," *Vivek & Jay, LLC v. Independent Specialty Insurance Co.*, 2023 WL 2921335 at *2 (S.D. Ala. 2023), but Great American offers none. The additional insured limitation endorsement, even if ambiguous, therefore must be construed against Great American, which means the Purchase Order does not "specify" coverage limits for purposes of the endorsement.

15

Great American appears to believe that the key question is whether the limits mentioned in the Purchase Order were "required." It is not. Given the "specified" language of its policy, the key question is whether the limits the Purchase Order required were a minimum amount or a fixed amount. As explained above, that the limits are expressed as a minimum rather than as a fixed amount means they are not "specified." This, in turn, means that the relevant policy limits are those identified in the declarations, *viz*., $25 million.

### 3. Employer liability exclusion.

Great American's policy excludes coverage for "'[b]odily injury' to … an employee of any 'Insured' arising out of and in the course of: (i) employment by any 'Insured'; or (ii) performing duties related to the conduct of any 'Insured's' business …." (Doc. 86-4 at 22-23). Great American notes that Tractor is a named insured and that Kelly was injured in the course of his employment by Tractor and while performing duties related to the conduct of Tractor's business. Great American posits without further discussion that this provision excludes coverage with respect to the *Kelly* lawsuit. (Doc. 99 at 11).

As the defendants point out, both the Alabama Supreme Court and the Eleventh Circuit, construing Alabama law, have concluded that substantively identical provisions are ambiguous as to whether they preclude coverage as to all insureds (PowerSouth and Tractor) or only as to the employer of the injured person (Tractor). *Transport Indemnity Co. v. Wyatt*, 417 So. 2d 568, 569, 571 (Ala. 1982); *James River Insurance Co. v. Ultratec Special Effects Inc*., 22 F.4th 1246, 1250, 1255-56 (11th Cir. 2022). Because Alabama law requires that exclusions be read narrowly and that ambiguous exclusions be construed against the drafting insurer, these decisions adopted the latter construction. Great American, which fails to acknowledge or address these authorities, offers no basis on which the Court could decline to follow them. The exclusion therefore does not apply as to PowerSouth.

**B. Priority of Insurance.**

As explained in Part I.A.1, the Indemnity Provision is valid and enforceable.  Great American concedes that, under such circumstances, PowerSouth is an additional insured under its policy.  It argues, however, that the "other insurance" provision of its policy and the corresponding provision of the Liberty Mutual policy establish that the Great American policy is excess and the Liberty Mutual policy primary, such that Great American may obtain reimbursement for the $1 million it paid to settle the *Kelly* lawsuit.  (Doc. 81 at 19-22).  The defendants respond that ordinary "other insurance" rules do not apply in the context of insured indemnity obligations.  (Doc. 95 at 8-22).

"An 'other insurance' clause may be circumvented by effect of a contract or rule of law.  For example, … an indemnity agreement between the insureds or a contract with an indemnification clause, such as is commonly found in the construction industry, may shift an entire loss to a particular insurer notwithstanding the existence of an 'other insurance' clause in its policy." Jordan R. Plitt *et al*., Couch on Insurance § 219.1 (3rd ed. Nov. 2023 update). "[T]he clear majority of jurisdictions recognizes the foregoing exception and gives controlling effect to the indemnity obligation of one insured to the other insured over 'other insurance' or similar clauses in the policies of the insurers, particularly where one of the policies covers the indemnity obligation." *American Indemnity Lloyds v. Travelers Property & Casualty Insurance Co*., 335 F.3d 429, 436 (5th Cir. 2003).  "[A]ll indications are that most, if not all, jurisdictions to have faced the question of whether an indemnification agreement could relieve particular insurers of an obligation to pay … have answered in the affirmative." *St. Paul Fire & Marine Insurance Co. v. American International Specialty Lines Insurance Co*., 365 F.3d 263, 272 (4th Cir. 2004).

The parties agree that Alabama law governs.  (Doc. 81 at 13; Doc. 95 at 8). "Where the highest court … has spoken on the topic, we follow its rule." *Molinos*

*Valle del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11ᵗʰ Cir. 2011).  Great American argues that Alabama has rejected the principle outlined in the preceding paragraph.  (Doc. 81 at 22-23.)  As support, it relies exclusively on *Nationwide Mutual Insurance Co. v. Hall*, 643 So. 2d 551 (Ala. 1994).  It is true that *Hall* involved the effort of the indemnitee's insurer to obtain reimbursement from the indemnitor's insurer for the cost of defending and settling a suit brought against the indemnitee, *id*. at 553-54, and it is further correct that the Alabama Supreme Court decided the case using ordinary "other insurance" principles.  *Id*. at 557-62.  However, the indemnitee's insurer argued only that it was entitled to reimbursement based on the "other insurance" provisions.  *Id*. at 557-60.  The indemnitee's insurer raised no argument based on the indemnity provision, and the Court addressed no such issue.  Because the *Hall* Court did not speak on the topic, it established no rule for this Court to follow.

        "Where that [highest state] court has not spoken, however, we must predict how the highest court would decide this case."  *Molinos*, 633 F.3d at 1348.  "As part of this inquiry, we consider whatever might lend us insight, including relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the [Alabama Supreme Court] would decide the issue at hand."  *Continental Casualty Co. v. Winder Laboratories, LLC*, 73 F.4ᵗʰ 934, 948 (11ᵗʰ Cir. 2023) (internal quotes omitted).  Importantly to this case, "[w]e presume that state courts would adopt the majority view on a legal issue in the absence of indications to the contrary."  *Id*. (internal quotes omitted).  The Eleventh Circuit has relied on this presumption in the insurance context.  *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4ᵗʰ 1347, 1358-59 (11ᵗʰ Cir. 2022).

        There is a wealth of authority adopting the approach expressed in Couch or predicting that a state would adopt that approach.  *E.g., St. Paul Fire and Marine*, 365 F.3d at 272 (Virginia); *American Indemnity Lloyds*, 335 F.3d at 436 (Texas); *Wal-Mart Stores, Inc. v. RLI Insurance Co*., 292 F.3d 583, 587, 589 n.1 (8ᵗʰ Cir.

2002) (Arkansas); *Century Surety Co. v. Metropolitan Transit Authority*, 2021 WL 4538633 at \*4 (2nd Cir. 2021) (New York); *Chandler v. Liberty Mutual Insurance Group*, 212 Fed. Appx. 553, 557 (6th Cir. 2007) (Kentucky); *Fireman's Fund Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 182 F. Supp. 3d 793, 822 (M.D. Tenn. 2016) (Tennessee); *Star Insurance Co. v. Continental Resources, Inc.*, 89 F. Supp. 3d 1015, 1028 (D.N.D. 2015) (North Dakota); *Chubb Insurance Co. of Canada v. Mid-Continent Casualty Co.*, 982 F. Supp. 435, 437-38 (S.D. Miss. 1997) (Mississippi)[6]; *St. Paul Fire and Marine Insurance Co. v. Lexington Insurance Co.*, 2006 WL 1295408 at \*4-5 (S.D. Fla. 2006) (Florida); *Federal Insurance Co. v. Gulf Insurance Co.*, 162 S.W.3d 160, 165-66 (Mo. App. 2005) (Missouri); *J. Walters Construction, Inc. v. Gilman Paper Co.*, 620 So. 2d 219, 220-21 (Fla. App. 1993) (Georgia).  Two sister courts have applied the rule in cases governed by Alabama law.  *Praetorian Insurance Co. v. SNL Distribution Services*, 2008 WL 11423974 at \*9 (N.D. Ala. 2008); *Pacific Life Insurance Co. v. Liberty Mutual Insurance Co.*, 2005 WL 1801602 at \*7 (M.D. Ala. 2005).  As the Fourth and Fifth Circuits have recognized, these cases represent the firm majority position.  The burden is thus on Great American to identify indications that the Alabama Supreme Court would reject the majority view.

The leading authority in this area is the Eighth Circuit's opinion in *Wal-Mart*.  Great American picks at the reasoning of *Wal-Mart*, denies that the concerns animating that decision are real, and encourages the Court to follow a "more nuanced and limited" rule that it attributes to a few decisions confined to two states.  (Doc. 81 at 23-25; Doc. 100 at 3-4).  Were *Wal-Mart* the outlier, these might be adequate reasons (if demonstrated) to conclude that the Alabama Supreme Court would decline to follow its lead.  The problem for Great American is that courts throughout the country have routinely followed *Wal-Mart* for two

---

[6] *See Travelers Property Casualty Co. v. Federated Rural Electric Insurance Exchange*, 2009 WL 2900027 at \*2 (S.D. Miss. 2009) (attributing *Chubb* to Mississippi law).

decades without being troubled by the matters Great American raises.  In such circumstances, the Court is unable to discern any indication that the Alabama Supreme Court would reject the majority position.[7]

Great American next argues that, even were the Alabama Supreme Court to adopt the *Wal-Mart* rule, it cannot apply here because the insurance requirement in paragraph 12 of the Purchase Order is not "expressly linked to the parties' indemnity obligations" established in paragraph 5.  (Doc. 99 at 9).  For this proposition, Great American relies on *Landmark American Insurance Co. v. HECO Realty, LLC*, 2022 WL 3585634 (6th Cir. 2022).  The Sixth Circuit construed the *Wal-Mart* line of cases to require that the indemnitor's agreement to purchase insurance be "directly related" to its agreement to indemnify, but it did not require that this relation be "expressly" stated.  *Id*. at *9.  Nor did *Wal-Mart*.  Instead, the necessary "close factual relationship between the indemnity obligation and the insurance contracts" existed simply because, as in this case, the insurance requirement was set forth in the same agreement as the indemnity provision, and the indemnitor's policies, though not purchased specifically to satisfy the insurance requirement, in fact satisfied it.  292 F.3d at 589-90.

For the reasons set forth above, the Court makes an *Erie* guess that the Alabama Supreme Court would follow the majority *Wal-Mart* line of cases, which precludes Great American, as the indemnitor's insurer, from recovering any part of its $1 million settlement payment from PowerSouth, as the indemnitee, or from Liberty Mutual, as the indemnitee's insurer.

---

[7] Great American has not, for example, suggested that the *Wal-Mart* line of cases depends upon legal propositions that Alabama courts have already rejected.  That omission may well be because *Wal-Mart* "rest[s] on general principles of insurance law." 295 F.3d at 589 n.1.  The mere fact that the *Wal-Mart* rule represents an exception to the application of "other insurance" analysis cannot be an indication the Alabama Supreme Court would reject it, since the same was true in every case following the majority position.

## C.  Resolution of Great American's Claims.

For reasons stated in Part I.A.2, the additional insured limitation endorsement does not eliminate any coverage obligation on the part of Great American.  Great American's motion for summary judgment as to Count I is due to be denied, and the defendants' counter-motions are due to be granted.

For reasons stated in Part I.B, the "other insurance" provisions do not render Great American's policy excess to that of Liberty Mutual and do not require that the two policies apply *pro rata*.  Great American's motion for summary judgment as to Count II is due to be denied, and the defendants' counter-motions are due to be granted.

The amended complaint explicitly conditions Great American's quest for equitable subrogation, contractual subrogation, and contribution on "the lack of coverage available under" its policy.  (Doc. 14 at 4).  Great American acknowledges that successful subrogation requires that it have "pa[id] a legal obligation which ought to have been met … by another" and that contribution requires that the other be "liable for the same risk."  (Doc. 99 at 22, 24 (internal quotes omitted)).  For reasons stated in Parts I.A and B, coverage is available under Great American's policy, neither defendant is liable for the same risk as Great American, and Great American did not pay a legal obligation that either defendant ought to have met.  Great American's motion for summary judgment as to Counts III, IV, and V is due to be denied, and the defendants' counter-motions are due to be granted.[8]

---

[8] Much of the parties' briefing is devoted to the alternative argument that, even if it owed no coverage or Liberty Mutual's policy was primary, Great American's effort to recoup its $1 million settlement payment is barred by Alabama's voluntary payment doctrine.  The Court's rulings on these antecedent questions obviate consideration of the voluntary payment issue.

## II.  Tractor's Claims.

PowerSouth's third party claim against Tractor relates the requirements of the Purchase Order regarding indemnity and insurance, the basic facts regarding Kelly's injury and the *Kelly* lawsuit, Great American's settlement of that lawsuit, Great American's position in this action that PowerSouth is not an additional insured, and its demand that PowerSouth reimburse some or all of the $1 million that Great American paid in settlement.  Count One alleges that Great American's claims against PowerSouth fall within the scope of the Indemnity Provision and seeks a declaration that Tractor thus owes PowerSouth a defense and indemnity from Great American's claims in this action.  Count Two alleges that Tractor has breached the Purchase Order because it has not provided a defense or indemnity regarding Great American's claims.  PowerSouth alleges as damages that it has incurred, and will incur, costs and attorney's fees in defending itself and will be furthered damaged should Great American prevail on its claims.  (Doc. 37).

In response to PowerSouth's pleading, Tractor filed a third-party claim against Great American.  The single count seeks declarations that Great American owes Tractor a defense and indemnity with respect PowerSouth's third-party complaint and that PowerSouth is an additional insured under the Great American policy with respect to the *Kelly* lawsuit, with available limits of $25 million. (Doc. 50).  In its motion for summary judgment, Tractor seeks declarations as to the duty to defend and the duty to indemnify.  (Doc. 83; Doc. 84 at 29).

### A.  Duty to Defend.

The Great American policy provides that "[w]e will have the … duty to … defend any 'suit' seeking damages covered by the terms and conditions of this policy …."  (Doc. 84-6 at 19).  While not disputing that PowerSouth's third-party complaint is a "suit" and that it seeks damages, Great American denies that the pleading seeks damages "covered by the terms and conditions of [its] policy." Great American argues both that PowerSouth's third-party complaint does not fall

within the policy's coverage provision and that coverage is otherwise precluded by certain exclusions.

"The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between the injured person and the insured prove a covered accident or occurrence." *Hartford Casualty Insurance Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1010 (Ala. 2005) (internal quotes omitted). When an insurer relies on ambiguous policy language, the Court may conclude the insurer has a duty to defend. *First Mercury Syndicate, Inc. v. Franklin County*, 623 So. 2d 1075, 1077 (Ala. 1993); *see also Hartford Casualty*, 928 So. 2d at 1011 ("This broad duty on the part of an insurer to defend an insured arises out of the principle that an ambiguous insurance policy is to be construed liberally in favor of the insured and strictly against the insurer."). When an insurer relies on policy exclusions to deny a duty to defend, they "are to be narrowly interpreted, and, when an ambiguity exists in the language of an exclusion, the exclusion will be construed so as to limit the exclusion to the narrowest application reasonable under the wording." *Mid-Continent Casualty Co. v. Advantage Medical Electronics, LLC*, 196 So. 3d 238, 244 (Ala. 2015) (internal quotes omitted).

### 1.  Coverage.

The Great American policy provides that:

> [w]e will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury" … that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.

(Doc. 86-4 at 18).

### a. "Occurrence."

Great American first argues that the third-party complaint alleges nothing that could be construed as an "occurrence" other than Tractor's breach of contract, which under Alabama law cannot constitute an "occurrence" because it is an intentional rather than an accidental event.  (Doc. 81 at 28-29; Doc. 98 at 3-4).  Great American may be correct that a breach of contract is not an "occurrence," but it is incorrect in asserting that PowerSouth's pleading fails to allege an occurrence.  The third-party complaint specifically alleges Kelly's bodily injuries and the occurrence causing them.  (Doc. 37 at 3-4).  Even were the third-party complaint unclear as to whether Kelly's injuries resulted from an "occurrence," Great American has conceded that Kelly's injuries resulted from an occurrence,[9] and both Great American and the Court would in any event be required to review the record for evidence of an occurrence,[10] which exists in abundance.

Great American argues that, even if Tractor's breach of its indemnity obligations is an "occurrence" for purposes of its policy, it is a "new" occurrence, such that State Auto's policy is primary and Great American's policy not implicated until and unless State Auto's $1 million policy limits are first exhausted.  (Doc. 81 at 29-30; Doc. 98 at 9-10).  As addressed above, the Court accepts Great American's premise that Tractor's alleged breach of contract is not an "occurrence," which moots Great American's argument.

To the uncertain extent that Great American suggests its policy requires, in order to trigger coverage, an "occurrence" beyond the occurrence causing Kelly's injuries, it is mistaken.  By its plain terms, the policy's coverage provision requires only that single "occurrence."

---

[9] (Doc. 89-9 at 37).

[10] *Hartford Casualty*, 928 So. 2d at 1010.

### b. Causal relation.

Great American next argues that coverage is implicated only if PowerSouth "seek[s] damages because of 'bodily injury'" to Kelly and that PowerSouth instead seeks damages "because of" Tractor's breach of the Indemnity Provision. (Doc. 98 at 3-4). Great American misreads its policy, which requires it to pay whatever Tractor is legally obligated to pay "by reason of" the liability Tractor assumed under the Indemnity Provision, so long as the liability that Tractor assumed is "because of" bodily injury caused by an occurrence.

As Great American acknowledges, (Doc. 89-9 at 33-34), the liability Tractor assumed under the Indemnity Provision extends to Kelly's injuries, which were caused by an occurrence. This satisfies the policy's "because of" requirement. If the Indemnity Provision requires Tractor to indemnify PowerSouth with respect to Great American's effort to shift to PowerSouth responsibility for the *Kelly* settlement, then Tractor is legally obligated to indemnify PowerSouth "by reason of [the] liability [Tractor] assumed under" the Indemnity Provision to do so, and Great American is thus required by its policy to provide coverage to Tractor.

Great American has not explained how its alternative reading of its coverage provision makes sufficient sense to render it a reasonable reading of the provision. Even had it done so, that would merely render the provision ambiguous and, because Great American neither identifies nor applies any rule of construction that might resolve any such ambiguity in its favor, the default rule of *contra proferentem* would require that its preferred reading be rejected in favor of the reasonable reading that provides coverage.

### c. Reach of the Indemnity Provision.

As noted, the Indemnity Provision required Tractor to indemnify PowerSouth "from any and all … claims, demands, suits, [and] actions … arising

25

from this Purchase Order, or the services performed or goods delivered under this Purchase Order, which are claimed or made by any person, firm, association or corporation." (Doc. 86-1 at 3-4). Great American does not dispute that its action against PowerSouth constitutes a claim, demand, suit and/or action within this provision. Nor does it dispute that it constitutes a firm, association, or corporation within this provision. However, Great American does deny that its claims "aris[e] from" the Purchase Order or the goods and services thereunder. They arise instead, Great American says, "from its partial settlement of" the *Kelly* lawsuit. In Great American's view, "[n]o logical reading" of the Purchase Order could extend its reach to the instant situation. (Doc. 81 at 16; Doc. 100 at 7).

If the Indemnity Provision unambiguously failed to reach Great American's claims against PowerSouth, Great American presumably would have no duty to defend. Whether the provision is unambiguous in this respect depends on the meaning of the undefined phrase, "arising from." Great American offers no authority, judicial or otherwise, from Alabama or elsewhere, addressing the scope of this key term, much less restricting it in a manner advantageous to Great American. Nor does Great American offer a textual analysis of the Indemnity Provision to show that, in context, its meaning must be as constricted as Great American would wish. The Court will not on its own conduct research or construct an analysis to support Great American's *ipse dixit*. Thus, for purposes of assessing the duty to defend, the Indemnity Provision must be considered potentially broad enough to reach Great American's claims against PowerSouth.

### 2. Exclusions.

Great American next turns to certain exclusions found in its policy.

### a. Employer liability exclusion.

As noted in Part I.A.3, this provision excludes coverage for bodily injury to an employee of an insured arising out of and in the course of his employment.

(Doc. 86-4 at 22-23). Because Kelly was Tractor's employee, Great American insists that it precludes coverage for Tractor. (Doc. 98 at 6). The exclusion, however, applies "except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy." (Doc. 86-4 at 22). The State Auto policy, which is listed in the schedule of underlying insurance, (*id*. at 8), includes an exclusion essentially verbatim to the Great American exclusion, followed by the statement that "[t]his exclusion does not apply to liability assumed by the insured under an 'insured contract.'" (Doc. 85-2 at 58). In light of this language and Great American's failure to address it, the Court must conclude that the employer liability exclusion does not apply here.

### b. Cross suits exclusion.

The "cross suits" exclusion excludes "[a]ny liability of any 'Insured' covered under this policy to any other 'Insured' covered under this policy." (Doc. 86-4 at 33). Great American argues that, because Tractor (by Great American's concession) and PowerSouth (by the Court's ruling) are both "insureds" as defined by its policy, this exclusion bars coverage for PowerSouth's claims against Tractor. (Doc. 81 at 29).

Tractor responds that the Eleventh Circuit, applying Alabama law, has rejected Great American's position. (Doc. 84 at 24-25 (citing *Twin City Fire Insurance Co. v. Ohio Casualty Insurance Co*., 480 F.3d 1254 (11ᵗʰ Cir. 2007)). The indemnitor's umbrella policy in *Twin City* included coverage, insured contract, additional insured, and cross-suits provisions identical or essentially identical to those in the Great American policy. 480 F.3d at 1261 & n.5, 1262, 1263 n.8. The insurer resisted demands for reimbursement of settlement costs incurred by the indemnitee and its insurers by invoking the cross-suits exclusion. *Id*. at 1257, 1262. The Eleventh Circuit ruled that the exclusion was "at best

ambiguous" and thus had to be construed against the indemnitor's insurer "and in favor of coverage." *Id*. at 1262, 1263.

The *Twin City* panel identified several strands of support for its conclusion. First, the policy made indemnitees under "insured contracts" additional insureds and provided coverage for the named insured's indemnity obligations to such additional insureds. Reading the cross-suits exclusion as the indemnitor's insurer would have it would thus "nullify the core of the additional insured coverage provision," since it would eliminate coverage with respect to an indemnitee named as an additional insured by virtue of an "insured contract," which result "would make little sense" and would border on "illusory coverage." Second, such a reading would conflict with the express terms of the "additional insured" and "insured contract" provisions. Third, it would conflict with the cross-suits exclusion itself, which professed "not [to] change any other provision of the policy." 480 F.3d at 1262-63 & nn.7, 8. Perhaps these objections could have been overcome had the exclusion employed language explicitly extending to this situation, but it did not. *Id*. at 1262. Fourth, Alabama law requires that exclusions be "interpreted as narrowly as possible in order to provide maximum coverage for the insured," with exclusionary language "construed most strongly against" the insurer. *Id*. at 1263 (internal quotes omitted). Fifth, the ambiguity resulting from all these sources compelled resolution of the exclusion's reach against the insurer. *Id*.

Because neither side offers any Alabama authority construing a cross-suits exclusion, the Court must make an *Erie* guess as to how the Alabama Supreme Court would rule. *Twin City* has already made that guess, and Great American identifies no viable basis on which the Court should, or even could, decline to follow its lead.

Great American argues that *Twin City* is not controlling here, "because the operation of the exclusion does not eliminate the coverage otherwise available to PowerSouth as an additional insured." (Doc. 81 at 29). This statement is

unexplained but presumably is meant to suggest that the cross-suits exclusion is enforceable because it does not eliminate PowerSouth's ability as an additional insured to seek redress directly from Great American.  Because that was also true in *Twin City*, it cannot furnish grounds to disregard that decision.

Great American also argues that *Twin City* depends on the policy's express provision of coverage for the named insured's indemnity obligations to the additional insured, whereas in this case there is no such coverage, due to the additional insured limitation endorsement, the primacy of Liberty Mutual's policy, and the operation of the employer liability exclusion.  (Doc. 98 at 7).  Because the Court has rejected all these efforts by Great American to avoid coverage, they cannot permit the Court to ignore *Twin City*.

Great American cites this Court's decision in *Ohio Casualty Insurance Co. v. Holcim (US), Inc*., 744 F. Supp. 2d 1251 (S.D. Ala. 2010), which distinguished *Twin City* and enforced a cross-suits exclusion.  *Id*. at 1267-69, 1273.  As the Court therein repeatedly stated, *Twin City* was not controlling in *Ohio Casualty* only because the cross-suits exclusion was not being invoked in the context of a named insured's indemnity obligations to an additional insured.  *Id*. at 1268-69. *Ohio Casualty* does not open up an avenue by which Great American can avoid the controlling nature of the Eleventh Circuit's holding in this case.

### c.  Contractual liability exclusion.

Although the coverage provision of the Great American policy covers sums that Tractor becomes legally obligated to pay by reason of liability Tractor assumed under the Indemnity Provision, the policy also includes a "contractual liability – following form" endorsement excluding such coverage "except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy." (Doc. 86-4 at 48).  Tractor argues that the exclusion does not apply, because the State Auto policy provides such insurance.  (Doc. 96 at 20-22).  Great

American does not disagree, but it emphasizes that the endorsement cannot "creat[e] coverage that would not otherwise exist."  (Doc. 98 at 5).

As the Court understands the argument, Great American is stressing that, even if the State Auto policy would provide coverage with respect to PowerSouth's third-party complaint, the reach of the Great American policy is not necessarily so expansive.  This seems clear from the language of the endorsement, which states that Great American's coverage will be no broader than State Auto's coverage but which does not state that Great American's coverage will be no narrower than State Auto's.  That is, the endorsement provides that the State Auto policy establishes the ceiling of Great American's coverage but not its floor. Tractor indicates no disagreement.

Great American does not argue that the State Auto policy would not reach the instant situation such that, pursuant to the contractual liability endorsement, the Great American policy cannot do so, either.  The Court therefore need not consider the exclusion further.

### B.  Duty to Indemnify.

Great American argues it has no duty to indemnify Tractor because:  (1) it has no duty to defend Tractor; (2) the Indemnity Provision is invalid; (3) the additional insured limitation endorsement caps Great American's exposure at the $1 million it has already paid; (4) the Liberty Mutual policy is primary; and (5) the employer liability exclusion precludes coverage.  (Doc. 81 at 28; Doc. 98 at 2, 8, 10).

The Court in this order has rejected Great American's first, third, fourth, and fifth proffered reasons for avoiding an indemnity obligation.  The Court has also rejected Great American's second proffered reason to the extent it rests on the position that the Indemnity Provision is too vague to be enforced.

The only ground for avoiding an indemnity obligation to Tractor that Great American has raised and the Court has not rejected is that the Indemnity Provision

does not obligate Tractor to indemnify PowerSouth with respect to Great American's claims against PowerSouth in this action.  All the Court has ruled in Part II.B.1.c is that Great American has not demonstrated that the Indemnity Provision unambiguously fails to reach those claims.  As noted in the Court's discussion, the key question appears to be the scope of the phrase, "arising from," as used in the Indemnity Provision.  Because neither side has seriously addressed that question, it is not properly before the Court.  Because the question remains unresolved, neither side may obtain summary judgment as to the duty to indemnify.

## CONCLUSION

For the reasons set forth above:  Great American's motion for summary judgment is **denied**; Liberty Mutual's motion for summary judgment is **granted**; PowerSouth's motion for summary judgment is **granted**; and Tractor's motion for summary judgment is **granted** with respect to the duty to defend and **denied** with respect to the duty to indemnify.  Great American's amended complaint is **dismissed with prejudice**.

DONE and ORDERED this 18 day of December, 2023.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE